UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN MEYERS and BILLIE JEAN
MEYERS, as parents and natural
guardians of JWM, a minor,

    Plaintiffs,

v.                                                                          Case No:   6:13-cv-1555-Orl-41TBS

UNITED STATES OF AMERICA,

    Defendant.

_____

## REPORT AND RECOMMENDATION

    This case comes before the Court without oral argument on Plaintiffs John and

Billie Jean Meyers, as parents and natural guardians of JWM, a minor's Motion for

Approval of Minor's Settlement; to Authorize and Direct Payment of Settlement Funds,

Attorney's Fees and Litigation Costs; and to Authorize Execution of Settlement

Agreements.   (Doc. 21).   For the reasons that follow, I respectfully recommend that the

motion be **GRANTED**.

### Background

    JWM was injured when a PVC rocket launcher exploded at a Brevard County,

Florida school activity sponsored by the National Aeronautics and Space Administration

("NASA").   (Doc. 1).   Following the accident, Plaintiffs made a claim against the Brevard

County School Board which settled for $150,000 without a lawsuit being filed.   (Doc. 21,

¶ 3).   Plaintiffs petitioned the Probate Division of the Circuit Court for the Eighteenth

Judicial Circuit in and for Brevard County, Florida for approval of the settlement.   (Id.;

Doc. 21-1).   The probate court approved the settlement and the funds were disbursed into a Wells Fargo restricted account.   (Id.).

Plaintiffs also brought this action against the United States pursuant to the Federal Tort Claims Act ("FTCA").   (Doc. 1; Doc. 21 ¶ 1).   The complaint alleges that the accident was caused by NASA's negligence in designing the PVC rocket launcher and in failing to warn users about the hazards the rocket launcher presented.   (Doc. 1, ¶ 11-15). Plaintiffs' complaint prays for damages in excess of $700,000.   (Id., at 4).   The parties successfully mediated this dispute, reaching a settlement in which the United States has agreed to pay $175,000 in full and final settlement of all claims arising out of the accident, subject to Court approval.[1]   (Doc. 21, ¶ 2).   The motion currently pending before the Court requests approval of the parties' mediated settlement of JWM's claims against the United States.

The law firm of High Stack Gordon Kirby took Plaintiffs' case on contingency.   The fee agreement provides that the firm will receive 25% of Plaintiffs' recovery, i.e., $43,750, plus costs advanced, which counsel represent total $2,795.27.   (Doc. 21, ¶ 6; Doc. 21-3 at 1).   The settlement proceeds will also be used to satisfy a $21,552 medical lien from Blue Cross Blue Shield of Illinois (negotiated down from $32,331.83), and an outstanding $25.40 medical bill from Medical Center Radiology.   (Doc. 21, ¶ 6).   Plaintiffs request that the remaining $106,877.33 be deposited in the same Wells Fargo account which contains the proceeds of the settlement with the Brevard County School Board.[2]   They represent that this account is restricted and subject to annual accounting pursuant to

---

[1] A copy of the parties' settlement agreement is filed at Doc. 21-2.
[2] A copy of the proposed settlement and cost statement is filed at Doc. 21-3.

Florida law.   (Doc. 21, ¶ 7).   Finally, Plaintiffs request authority to execute all necessary instruments to complete the settlement on JWM's behalf.   (Doc. 21 at 3).

## Discussion

Under Florida Law, the settlement of a claim on a minor's behalf becomes effective only when certain procedures are followed.   Where, as here, the settlement was reached after the start of litigation, any settlement on behalf of a minor requires the approval of the court "having jurisdiction of the action."   FLA. STAT. § 744.387(3)(a).   If the gross settlement amount exceeds $50,000, as it does here, the court "shall appoint a guardian ad litem to represent the minor's interest before approving [the] settlement," although a guardian is not necessary if a guardian of the minor has previously been appointed and the guardian has no potential adverse interest to the minor.   FLA. STAT. § 744.3025(1)(b), (d).   "The duty of the guardian ad litem is to protect the minor's interests as described in the Florida Probate Rules."   FLA. STAT. § 744.3025(1)(d).   In reviewing the settlement, the court's inquiry is limited to whether the settlement is in the best interests of the minor. Bullard v. Sharp, 407 So. 2d 1023, 1023–24 (Fla. App. 4th Dist. 1981) (holding that a trial court may not withhold approval of settlement of a minor's claim on the grounds that the minor's recovery is excessive); In re Smith, 926 F.2d 1027, 1029-30 (11th Cir. 1991) (following Bullard).   If the court approves the settlement, and the net proceeds to the minor exceed $15,000, the court must appoint a guardian to receive and manage the proceeds if no guardian has been appointed.   FLA. STAT. § 744.387(3)(b); see also FLA. STAT. § 744.301(2) (natural guardians (i.e., parents) may receive and manage minor child's property "if the amounts received in aggregate do not exceed $15,000").   When a court approves a settlement, "the guardian is authorized to execute any instrument that may be necessary to effect the settlement."   FLA. STAT. 744.387(4).

Because this case arises under federal law and is brought in federal court, Florida law regarding approval of a minor's settlement agreement is not binding.   That does not mean the Court should ignore Florida law.   Lawsuits against the United States, "although governed by federal law, do not inevitably require resort to uniform federal rules."   United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28 (1979) (citing Clearfield Trust Co. v. United States, 318 U.S. 363, 367 (1943); United States v. Little Lake Misere Land Co., 412, U.S. 580, 594-95 (1973)).

Of course, if federal law already provides the applicable rule, resort to state law is not necessary.   The Eleventh Circuit has held that "'[t]he appointment of a guardian ad litem is a procedural question controlled by Rule 17(c) of the Federal Rules of Civil Procedure.'"   Burke v. Smith, 252 F.3d 1260, 1264 (11th Cir. 2001) (quoting Roberts v. Ohio Casualty Ins. Co., 256 F.2d 35, 38 (5th Cir. 1958)).   Burke was an Erie case, but its holding–that Rule 17(c) is broad enough to control the question of whether the Court should appoint a guardian ad litem–is no less applicable in cases arising under federal law than in diversity cases.[3]

Rule 17(c)(1) authorizes a "general guardian" to "sue or defend on behalf of a minor."   Rule 17(c)(2) provides that a minor without "a duly appointed representative may sue by next friend or by guardian ad litem," and that the Court "must appoint a guardian ad litem–or issue another appropriate order–to protect a minor or incompetent person who is unrepresented in an action."   Although these rules do not expressly address when the Court should appoint a guardian ad litem to represent a minor who is already represented by a parent in litigation, the Eleventh Circuit has held that "unless a conflict of

---

[3] Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

interest exists between the representative and minor, a district court need not even consider the question whether a guardian ad litem should be appointed."   Burke, 252 F.3d at 1264.   In Burke, the Eleventh Circuit explained that "when a minor is represented by a parent who is a party to the lawsuit and who has the same interests as the child there is no inherent conflict of interest."   Id.   No facts have come to my attention which cause me to believe JWM's interests and the interests of his parents conflict.   I am also unaware of any reason why JWM's parents are not adequately representing their child's interests.   Accordingly, I see no need to appoint a guardian ad litem at this time.

While the Federal Rules of Civil Procedure provide the applicable rule regarding appointment of a guardian for a minor in litigation, federal law does not speak to the other issues raised by the Florida statutes, specifically, the standard the Court must apply in determining whether to approve JWM's settlement and the disposition of any settlement proceeds, including whether a guardian must be appointed to manage those proceeds. When confronted with a gap in a federal statutory scheme, federal courts may, depending on the circumstances, choose to adopt state law rather than craft a uniform federal rule. Kimbell Foods, 440 U.S. at 728.   In making this choice, federal courts must examine the effects of crafting a uniform rule or incorporating state law on Congress's objectives, the prerogatives of the states, and the interests of private parties.   Id. at 728-29.   Uniform rules are necessary "where application of state law would impair the federal policy, or where there is a 'distinct need for nationwide legal standards,' uniform standards must be developed."   Reo v. U.S. Postal Service, 98 F.3d 73, 76 (3d Cir. 1996).   But, "where state law on an issue is well-developed, or where Congress specifically intends to subject federal actors to local standards, state law is preferred."   Id.

This case fits squarely into the latter category.   There is no need to adopt nationwide rules concerning the standards the Court should apply in determining whether to approve JWM's settlement, the disposition of the settlement proceeds, or if a guardian must be appointed to manage the proceeds.   State domestic relations law is well developed, while federal law on these issues is limited.   Congress has also manifested its intention that state law govern federal actors in tort cases brought against the United States.   The FTCA provides that "[t]he United States shall be liable [in tort cases] in the same manner and to the same extent as a private individual under like circumstances," subject only to certain exceptions and limitations not relevant here.   28 U.S.C. § 2674. Although the FTCA does not require application of Florida domestic relations law in this case, the Court should follow Florida law on these questions "as a matter of judicial policy."   Kimball Foods, 440 U.S. at 728.

My conclusion is consistent with that of the Third Circuit in Reo, where the court invalidated a pre-litigation settlement of a minor's FTCA claim because no court had approved the settlement as required by New Jersey law.   98 F.3d at 76.   It is also consistent with Reed ex rel. Reed v. United States, 891 F.2d 878 (11th Cir. 1990), an FTCA case in which the Eleventh Circuit said in a footnote that "Florida law requires court approval of all settlements involving a minor for the settlement to be effective."   Id. at 881 n. 3.   Other federal courts have followed state law for approving a minor's settlement of claims arising under federal law involving private and state and local governmental parties.   See, e.g., Carter v. Fenner, 136 F.3d 1000, 1007-09 (5th Cir. 1998) (holding that failure to follow procedures required by Louisiana domestic relations law to compromise minor's claim rendered consent judgment on § 1983 claim void); Elmore v. Mansfield, No. 3:11-cv-5088-DGK, 2013 WL 266167, at *1 (W.D. Mo. Jun. 12, 2013) (applying state law

in denying without prejudice motion to approve minor's settlement of § 1983 claim and pendent state law claims); In re Peanut Corp. of America, No. 6:10cv027, 2010 WL 3463212, at *4 (W.D. Va. Aug. 25, 2010) (applying Virginia law to evaluate settlement of minor's claim against corporation in chapter 7 bankruptcy); Nice v. Centennial Area School Dist., 98 F. Supp. 2d 665, 668-69 (E.D. Pa. 2000) (holding that "in a federal civil rights action, it is appropriate to apply the rule of decision prescribed by state law in determining the fairness of a minor's compromise and the reasonableness of any attorneys' fees allocated from that settlement"); see also In re Smith, 926 F.2d 1027, 1029 n. 3 (11th Cir. 1991) (noting that trial courts "may consider state law in evaluating whether" a settlement of a minor's federal law claim violates public policy).

   Under Florida law, the Court only considers the best interests of the child in deciding whether a settlement should be approved.   Bullard, 403 So. 2d at 1023-24.   "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion of the parties."   Smith, 926 F.2d at 1028-29.   Plaintiffs have negotiated a $175,000 settlement with the United States.   This is substantially less than what they prayed for in their complaint.   However, Defendants denied liability and raised multiple affirmative defenses, including one partial affirmative defense that almost certainly has merit, namely, the school board's fault in causing JWM's injuries.[4]   (Doc. 11).   The settlement was negotiated by attorneys hired by JWM's parents, who share his interest in maximizing the settlement amount.   And, there is no evidence of collusion

---

   [4] Florida has abolished joint and several liability in favor of fault-based apportionment of damages. See Fla. Stat. § 768.81.   Thus, the United States' liability for Plaintiff's proven damages would be reduced by the percentage of fault attributable to the school board.

between Plaintiffs and the government.   Under these circumstances, I see no reason to believe the parties' mediated settlement is not in JWM's best interests.

I also find that the requested attorney's fee is reasonable.   Federal law sets a 25% cap on contingency fees in FTCA cases that are litigated to judgment or settled in litigation.   28 U.S.C. § 2678.   Plaintiff's contingency fee agreement provides for the payment of a 25% fee out of JWM's recovery.   (Doc. 21, ¶ 6).   The Florida probate court allowed a 25% contingent fee to counsel when it approved the settlement between Plaintiffs and the school board.   If the 25% contingency fee in that case was reasonable, then it is hard to see how the 25% contingency fee here is not also reasonable.   I also find that reimbursement of $2,795.27 in client costs is reasonable under the circumstances.   Finally, I recommend that the Court approve the disbursements of $21,552.00 to Blue Cross Blue Shield of Illinois and $25.40 to Medical Center Radiology.

Concerning the management of the settlement proceeds, I agree with Plaintiffs' suggestion that the proceeds from both settlements should be combined in the Wells Fargo restricted account.   This is simple, it reduces administration costs, and it allows the state court to supervise JWM's money–a function it is better equipped than this Court to perform.

### Recommendation

Based on the foregoing, I respectfully recommend that the Court **GRANT** Plaintiffs' motion and enter an order:

1.   Approving the settlement of JWM's claim against the United States for $175,000;

2.   Authorizing Plaintiffs to execute all necessary instruments to complete the settlement on behalf of JWM;

3.   Approving disbursement of the settlement funds as follows: $43,750 in attorney fees to the High Stack Gordon Kirby law firm; $2,795.27 in costs to High Stack Gordon Kirby; $21,552 to Blue Cross Blue Shield of Illinois; $25.40 to Medical Center Radiology; and the remaining $106,877.33 to JWM;

4.   Directing High Stack Gordon Kirby to, upon approval by the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, deposit the proceeds due JWM in the same Wells Fargo restricted account which contains the proceeds of the settlement of JWM's claims against the school board.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on September 5, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record